.(133 App. Div. 630.)

### PEOPLE v. FREEMAN.

(Supreme Court, Appellate Division, First Department. July 13, 1909.)

1. CRIMINAL LAW (§ 1159*)—APPEAL—REVIEW—CONFLICTING EVIDENCE.

Where there was a conflict between the state's and defendant's witnesses, it was for the jury, and not the Appellate Court, to decide which witness was to be believed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3076; Dec. Dig. § 1159.*]

2. WITNESSES (§ 199*) — CONFIDENTIAL COMMUNICATIONS — ATTORNEY AND CLIENT.

Where, at the time a statement was made by defendant to an attorney, such attorney was representing other parties, and had no professional relations with defendant, the communication is not confidential.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 749; Dec. Dig. § 199.*]

Appeal from Court of General Sessions, New York County.

Walter K. Freeman was convicted of grand larceny in the first de- .gree, and he appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

-*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Clark L. Jordan, for appellant.

Robert S. Johnstone and William Travers Jerome, Dist, Atty., for the People.

CLARKE, J. The defendant claimed to have discovered a process for the manufacture of synthetic camphor from turpentine. He had a laboratory at Rutherford, N. J., in which he had installed a partial plant and some apparatus for the carrying on of the experimental work. Parke, Davis & Co. were manufacturing chemists in Detroit, Mich. Mr. Herbert Turrell was the New York agent of Parke, Davis & Co., and department manager of their New York branch, and had been associated with the company for upwards of 20 years. In the latter part of September or early October, 1904, Mr. Turrell, accompanied by Mr. Smedley, the treasurer of the company, and Mr. MacIntosh, who introduced them to the defendant, at the defendant's request visited his laboratory. The defendant stated that he was arranging to place a plant in the building for the manufacture of camphor, and exhibited certain drawings and apparatus. He stated that he had taken spirits of turpentine and from such spirits he got 50 to 80 per cent. artificial camphor; that camphor so produced would cost about 18 cents per pound; that he had spent a great deal of time and thought on the subject and spent considerable money in the experimental work; that he was ready to go ahead and produce 400 or 500 pounds of camphor per day at a price not exceeding 20 cents per pound. He said:

"I need help; but, if I do not get it from Parke, Davis & Co. or other houses, I will go ahead alone in some way and produce camphor."

Mr. Smedley asked the defendant how much it would take to complete the experiment so that camphor could be produced in commercial quantities, and the defendant stated various sums from $8,000 to $14,000. The defendant then asked Smedley to bring to his laboratory whoever he cared to to watch the building and see that he produced camphor from spirits of turpentine, and that then he would be ready to make some contract with Parke, Davis & Co., naming Powers & Whitman and Parke, Davis & Co. as the only firms that he would contract with in this country. Subsequently, about the last week in October, Mr. Smedley and Mr. Turrell and two chemists went to the defendant's Rutherford laboratory with a package of spirits of turpentine, which was handed to the defendant, who asked them to go into a small room, see what was there, and move the vessels and the materials and the drugs that were on the shelves. One of the chemists asked the privilege of staying with the defendant in the small room while the camphor was made, but the defendant said that he could not do so, but that they could hand him the turpentine, and that he must be left alone and would produce camphor. They remained all day, and about 6 o'clock in the evening the defendant came from the small room with a quantity of the so-called camphor, possibly half a pound, stating that the yield was not so good that day from the quantity given him as it had been on other occasions. The head chemist of Parke, Davis & Co. reported against the method, but in spite of the adverse report Parke, Davis & Co. and the defendant entered into a written

agreement at Detroit on the 10th of November, 1904, which recited among other things:

"Whereas said second party believes he has made certain new and useful discoveries in chemistry especially relating to terpenes proper, and a process of winning from the American commercial turpentine a product substantially camphor, equal to the samples submitted and complying with the requirements of the United States Pharmacopœia; * * * and whereas said second party desires the assistance of said first party in perfecting and commercially developing said discoveries: * * * The party of the first part hereby agrees to pay the cost of the apparatus and supplies necessary to demonstrate for a product substantially camphor, as above specified, can be commercially derived from American Turpentine, which cost it is hereby agreed shall not be more than $15,000, and which apparatus said second party hereby agrees will be capable of producing 400 pounds of the product per day. * * * Respecting the cost of apparatus, etc., and as provided in paragraph numbered first in this agreement, it is hereby mutually understood and agreed between the parties hereto that $7,500 shall be paid by said first party to said second party as soon after the execution of this agreement as said second party shall convey to said first party an undivided three-fourths interest in the apparatus, appurtenances, etc., by proper deed or bill of sale duly recorded, and the balance of such cost within the limit stipulated in said paragraph numbered first to be paid from time to time as the bills accrue."

Thereafter a bill of sale from the defendant to Parke, Davis & Co. was executed and delivered, dated November ——, 1904, acknowledged November 16, 1904, and recorded on December 2, 1904, transferring an undivided three-fourths interest in certain chattels described as being in Rutherford, N. J., in conformity with the agreement to give such bill of sale set forth in the first paragraph of the contract of November 10th. On November 12, 1904, Parke, Davis & Co. paid to the defendant $2,000, and on November 21, 1904, $5,500, making the $7,500 agreed to be paid upon the execution of the bill of sale. In short, the agreement was to pay $7,500 for a three-fourths interest in the apparatus and supplies necessary to demonstrate for a product substantially camphor capable of producing 400 pounds per day and to pay for the labor and materials necessary which cost, including the $7,500 paid, should not exceed $15,000. By the end of February, 1905, Parke, Davis & Co. had paid practically the full sum of $15,000. The defendant was indicted and has been convicted of obtaining $2,250 from Parke, Davis & Co. upon the false and fraudulent representations that he had purchased from a certain corporation called Baker & Co., Incorporated, a quantity of platinum, to wit, 1,019 ounces, 9 pennyweights, and 7 grains, and that he had paid the said corporation $2,250 in part payment thereof.

The people offered in evidence a typewritten memorandum entitled, "Report ending November 30, 1904," which embraced various items of labor and material, which was claimed to have been made out and delivered to Mr. Turrell who had charge for Parke, Davis & Co. of its transactions with the defendant as he was notified by letter dated November 18, 1904, in which, among other things, the company said:

"We have decided that Mr. Turrell shall represent us in checking up, etc., and anything pertaining to payment of bills, etc. You will please communicate with him at once as he has instructions to take care of them promptly."

Upon this memorandum appears, among the other items checked by Turrell with his initials, "November 23, paid on account of materi-

als, Baker & Co. $2,250." In connection with this was written in Turrell's handwriting, "$20.50 per oz., 119 oz., 9 pw., 7 grs platinum," and after the words Baker & Co., "Newark" followed by Turrell's initials, "H. T.," and in connection with the other items on said memorandum were explanatory words written by Turrell from information claimed to have been received from the defendant and from bills produced by him and checked up by Turrell. The whole amount of said bill, including the platinum, was $2,879.99, and the defendant conceded upon the trial that he received a chĕck of $2,779.90 from Parke, Davis & Co., and that he received in cash $179.90 and a check for $2,500 which was paid, and that he received the cash therefor. He subsequently received the $100 which made the full amount of the bill; an error having been made in the first instance, making it $2,779.90, instead of $2,879.90. It was also admitted that the defendant did not purchase any platinum from Baker & Co. of Newark or any firm of that name; his counsel stating, "We admit unequivocally he did not purchase any platinum," and the defendant testified, "Platinum was not essential in producing camphor synthetically."

Two questions were sharply presented upon the trial of this case. First, did the defendant represent that he had purchased platinum for the purpose of conducting this experimental work and pay therefor the sum of $2,250, and upon such representation, admittedly false if made, receive said sum from Parke, Davis & Co.; and, second, were the checks which he conceded to have received delivered at Rutherford, N. J., or were they delivered and received in the county of New York? It would serve no useful purpose to analyze the testimony. Both questions were questions of fact. There was a sharp conflict between the people's witness Turrell and the defendant who took the stand in his own behalf. It was for the jury to decide which witness was to be believed. There was evidence from which the jury could have found that the defendant was receiving payment for the same items from another concern for many of his expenditures without the knowledge of Parke, Davis & Co. His own statements, both on and off the stand, which were in evidence, were before the jury. An attorney testified that the defendant had stated to him that he had bought $2,-500 worth of platinum from Baker & Co., Newark. This testimony, corroborative of the people's claim, was of great force in supporting the evidence of Turrell, and is challenged by the defense upon the ground that at the time of the statement made to the attorney by the defendant said attorney was representing the defendant, and the evidence was therefore inadmissible as a disclosure of confidential communications. We are satisfied that at the time when the statement was made by the defendant to the attorney said attorney was representing other parties, and had no professional relations with the defendant, and therefore the admission of his testimony was not error.

We are of opinion, upon examination of the whole case, that no error prejudicial to the defendant was committed, and that the verdict of the jury is supported by the evidence, and that the judgment should be affirmed.

There is also brought up for review an order denying a motion for a new trial upon the ground of newly discovered evidence. We have

examined these matters with the utmost care, and within the well-settled rules governing such applications we find no error in the denial of said motion, and said order should also be affirmed. All concur.

